## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| M.R., a minor, | ) |
| Y.O., a minor, and | ) |
| S.S., a minor, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| RAW SEAFOODS, INC., JASON | ) |
| HUTCHENS, SCOTT HUTCHENS, | ) |
| and ROLANDO DOE, | ) |
| | ) |
| *Defendants*. | ) |

**No. 24-12427**

_____)

### COMPLAINT

In 2022, Defendant Raw Seafoods, Inc., ("Raw Seafoods") hired three immigrant children—Plaintiffs M.R., Y.O., and S.S.—to work in its seafood processing plant in Fall River, Massachusetts. A leading wholesale seafood supplier in New England, Raw Seafoods promotes responsible seafood practices, offers a "No Bullsh*t Policy" of relationships built on "trust, reliability [and] transparency," and promises its customers, "we have your back." But in fact, Raw Seafoods has profited off exploiting immigrant children. Raw Seafoods and its co-defendants, owners Jason Hutchens and Scott Hutchens, and supervisor Rolando Doe, knew or should have known that Plaintiffs were only fifteen years old. Despite their avowed commitments to socially responsible business practices, Defendants extracted child labor from Plaintiffs, forced them to work through perilous overnight shifts, and subjected Plaintiffs to coercion, psychological abuse, hazardous workplace conditions, and a discriminatory work environment. As a result, Defendants jeopardized Plaintiffs' physical safety and undermined

their dignity. Defendants' actions violated federal and state law and international human rights norms, giving the lie to their claims of social responsibility.

Defendants coerced Plaintiffs M.R. and Y.O. into working approximately ten-and-a-half-hour shifts, from around 3:30 PM to 2:00 AM (or longer), often six days per week. M.R. and Y.O. worked in a refrigerated area of the facility, cutting fish with sharp knives, packing and moving heavy boxes, and handling dangerous machinery. Defendants required S.S. to work from around 5:00 PM until approximately 2:00 AM under similar conditions. The hazardous and abusive workplace created by Defendants caused Plaintiffs physical and emotional harm.

Defendant Doe, who oversaw Plaintiffs' day-to-day work, often referred to Plaintiffs individually as "*el patojo*" ("the kid") or collectively, "los *patojos*" ("the kids"). Doe intentionally obstructed M.R. and S.S.'s ability to attend and participate in school by imposing work schedules that afforded them approximately two to four hours of sleep per night—leaving them exhausted during the school day and unable to do homework or study. Doe prevented Y.O. from attending school altogether by refusing him time off to obtain the vaccines required for school enrollment.

Defendant Doe also segregated Plaintiffs and assigned them more dangerous and laborious tasks based on their ethnicity. Doe and many workers at Raw Seafoods were ethnically K'iche' (an indigenous group in the Americas), while Plaintiffs are not. Whereas K'iche' workers were assigned to package fish, Defendant Doe required Plaintiffs to undertake riskier tasks, such as cutting fish using knives and machines with sharp blades in a frigid environment. Defendant Doe further incited a hostile working environment against Plaintiffs by berating them with racist remarks, profanity, and obscenities nearly every day.

Defendants profited from exploiting children notwithstanding their empty promises of social responsibility. Plaintiffs now bring this action to hold Defendants accountable for their abusive practices. Plaintiffs seek disgorgement of the ill-gotten gains that Defendants procured from their labor and to recover compensatory and punitive damages to remedy the forced labor, hazardous working conditions, and discrimination they suffered at Defendants' hands.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1350, and 18 U.S.C. § 1595(a), and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as all events and omissions giving rise to the claims occurred within this District.

## PARTIES

3.     Plaintiff M.R., a minor and non-U.S. citizen, was employed by Raw Seafoods, Inc. from approximately July 2022 to January 2023. He resides in Rhode Island.

4.     Plaintiff Y.O., an unaccompanied minor and non-U.S. citizen, was employed by Raw Seafoods, Inc. from approximately July 2022 to January 2023. He resides in Rhode Island.

5.     Plaintiff S.S., an unaccompanied minor and non-U.S. citizen, was employed by Raw Seafoods, Inc. in late 2022. He resides in Massachusetts.

6.     Raw Seafoods, Inc. ("Raw Seafoods"), is a Domestic Profit Corporation organized and existing under the laws of the State of Massachusetts. Its principal place of business is 481 Currant Road, Fall River, MA 02720.

7.     Defendant Jason Hutchens is the Co-owner, President, Treasurer, Secretary, and Director of Raw Seafoods, Inc. As such, he regularly transacts business within the State of Massachusetts. On information and belief, he resides in Massachusetts.

8.     Defendant Scott Hutchens is the Co-owner and Vice President of Raw Seafoods Inc. As such, he regularly transacts business within the State of Massachusetts. On information and belief, he resides in Massachusetts.

9.     Defendant Rolando Doe is an area supervisor at Raw Seafoods, Inc. As such, he regularly transacts business within the State of Massachusetts. His last name and place of residence are unknown to Plaintiffs.

## STATEMENT OF FACTS

10.     Defendant Raw Seafoods, founded in 1998, operates an 80,000-square-foot seafood product preparation and manufacturing plant specializing in frozen scallops, shrimp, and fish. Its clients include distributors, retailers, restaurants, and high-end vendors nationwide, such as Whole Foods, Inc. It has approximately 350 employees.

11.     Defendant Raw Seafoods advertises that it is a member of various international organizations that support socially responsible seafood practices, including prohibitions on child labor.  For example, its website states that it is "a proud corporate member of the Global Seafood Alliance (GSA)," and that it "directly supports GSA in its mission of advancing responsible seafood practices worldwide." *Global Seafood Alliance*, Raw Seafoods, https://rawseafoods.com/gsa (last visited Sept. 23, 2024). GSA's standards for seafood processing plants include a prohibition on child labor. *A closer look at what happens at seafood processing plants*, Glob. Seafood All. (Feb. 2, 2022), https://www.globalseafood.org/blog/seafood-processing-plant/ (last visited Sept. 23, 2024).

4

12.     Raw Seafoods offers a "No Bullsh*t Policy" of relationships built on "trust, reliability [and] transparency," and promises its customers, "we have your back." *No BS Policy*, Raw Seafoods, https://rawseafoods.com/no-bs-policy (last visited Sept. 23, 2024); *Become a Customer*, Raw Seafoods, https://rawseafoods.com/quality (last visited Sept. 23, 2024).

13.     The federal government has investigated Raw Seafoods and found it to have violated workplace safety and employment laws. *See, e.g.*, *Data Enforcement*, U.S. Dept. of Lab., https://enforcedata.dol.gov/Enfdata/search.php (filter by "Massachusetts" then search "Raw Seafoods"); David Deegan, *Two Fall River Seafood Companies Pay Fines for Chemical Reporting Violations*, Env't Prot. Agency (EPA) (Sept. 22, 2008) (reporting that the EPA fined Raw Seafoods for failing to "provide local and state emergency responders with important information about the hazardous substances" it uses at its facility).

14.     Defendants Jason Hutchens and Scott Hutchens run Raw Seafoods jointly. As co-owners, they jointly hold ultimate control over the corporation's financial affairs, the conduct of the business, and its daily operations. Together, and at all times relevant to this action, they possessed and exercised the ultimate authority to hire, fire, determine the compensation, roles, and responsibilities of employees, and take other tangible employment actions against employees, including Plaintiffs.

15.     Defendant Doe is an area supervisor at Raw Seafoods. He exercised operational control over significant aspects of the corporation at all times relevant to this action. He possessed the authority to determine Plaintiffs' roles and responsibilities as employees, oversee their work and day-to-day tasks, reassign them to different tasks, and take other tangible employment actions against them.

*Defendant Doe Willfully Employed and Abused Fifteen-Year-Old Plaintiffs at Raw Seafoods*

16.     In or around July 2022, Plaintiffs M.R. and Y.O. visited a grocery store in Fall River, Massachusetts, where they saw a Raw Seafoods recruitment kiosk. They inquired about work opportunities at the kiosk, and the attendant invited the minors to apply.

17.     A friend of Plaintiff S.S. gave him information about Raw Seafoods and he sought work with Defendants in late 2022.

18.     Plaintiffs sought work to support their family members in Guatemala financially. Y.O. and S.S. are in the United States without their parents, and M.R.'s mother does not live in the United States.

19.     Several days after they spoke to the recruiter at the grocery store, Plaintiffs M.R. and Y.O. each interviewed with management at Raw Seafoods.

20.     Raw Seafoods hired Plaintiffs M.R. and Y.O in July 2022 and Plaintiff S.S. in late 2022, notwithstanding federal and state laws prohibiting oppressive child labor. 29 U.S.C. § 212(c); Mass. Gen. Laws ch. 149 § 60 (2023). Plaintiffs were each fifteen years old at the time.

21.     When Plaintiffs were hired, Raw Seafoods management prepared employment documents in English, which none of the Plaintiffs understood, and instructed Plaintiffs to sign the documents. Management also took pictures of Plaintiffs and printed their employee identification cards.

22.     Defendants assigned Plaintiffs to work overnight shifts in the "bag-packing" area of the Raw Seafoods plant under the supervision of Defendant Doe.

23.     Defendant Doe knew Plaintiffs were minors during their employment period.

24.     Defendant Doe once asked M.R. for his age. M.R. informed him that he was fifteen years old. Defendant Doe responded, "You are still a kid," or words to that effect.

6

25.     Defendant Doe often referred to Plaintiffs individually as "*el patojo*" ("the kid").

26.     Defendant Doe told S.S. that he did not look eighteen, or words to that effect, on at least one occasion.

27.     Plaintiffs were not the only minors working under Defendant Doe's supervision. During Plaintiffs' employment, approximately eight to ten other minors worked at the processing plant.

28.     Many of Plaintiffs' older coworkers and employees in the "bag-packing" area of the plant knew that Plaintiffs and the other underage employees were minors.

29.     Plaintiffs M.R. and S.S. enrolled in the ninth grade during the Fall 2022 semester.

30.     Defendant Doe knew Plaintiffs M.R. and S.S. attended school during the day.

31.     Defendant Doe reprimanded and scolded Plaintiffs M.R. and S.S. when they had to attend class or attempted to prioritize their coursework.

32.     Plaintiff Y.O.'s work schedule at Raw Seafoods prevented him from attending a scheduled vaccine appointment required for him to enroll in school. Therefore, Y.O. could not enroll in ninth grade as planned and missed the entire 2022-23 academic year.

33.     Defendant Doe refused to grant Plaintiff Y.O. time off from work to attend this scheduled vaccine appointment, despite Y.O. informing Defendant Doe he needed these vaccines to enroll in school.

***Defendants Forced Plaintiffs to Work Under Hazardous and Traumatic Working Conditions***

34.     Plaintiffs M.R. and Y.O.'s work shifts generally started at approximately 3:30 PM and ended around 2:00 AM, with a fifteen-minute break at approximately 6:00 PM and a thirty-minute meal break at approximately 9:00 PM. They generally worked Monday through Friday each week and during the weekend at least twice per month.

7

35.     Plaintiff S.S.'s work shift started at approximately 5:00 PM and ended between approximately 2:00 AM, with a fifteen-minute break at around 6:00 PM and a thirty-minute meal break at approximately 9:00 PM. He generally worked Mondays through Fridays each week and sometimes Saturdays.

36.     During the hiring process, Defendants indicated that the only available work was packing fish. But Plaintiffs were ultimately assigned many other dangerous tasks.

37.     Plaintiffs' responsibilities required laboring under highly dangerous conditions, such as cutting fish using machinery with sharp blades, operating a dangerous fish-sorting machine, transporting heavy boxes of fish and equipment, spending much of their shift in freezing temperatures, and being exposed to toxic chemicals and fumes.

38.     Plaintiffs did not receive training on how to safely operate either the bladed fish-cutting machine or the fish-sorting machine.

39.     To operate the fish-sorting machine, M.R. and S.S. climbed four to five feet off the ground to feed fish into the machine, placing them at risk of falling and suffering severe injuries.

40.     M.R. also passed fish through a bladed machine that cut the fish in half. Y.O. typically received the cut fish at the opposite end of the machine.

41.     Throughout their employment, Plaintiffs suffered physical and psychological injuries due to their hazardous and physically demanding responsibilities.

42.     M.R. once cut his thumb while operating the plant's fish-cutting machinery. His injury required a bandage to stop the bleeding.

43.     S.S. once cut his hand with a knife that he was using to open bags of fish, losing a lot of blood, and received only a bandage from Defendant Doe to stop the bleeding.

8

44. During this sorting and cutting work, S.S.'s hands were in near constant contact with frozen fish. Defendants did not provide adequate personal protective equipment, leaving S.S. with freezer burns and scarring. These freezer burns often caused S.S.'s hands to shake so severely that he could not hold a pencil at school the next day.

45. Defendant Doe regularly required Plaintiffs to lift and carry heavy boxes that exceeded their physical abilities. This heavy lifting inflicted significant pain on Plaintiffs, causing S.S. back pain and causing Y.O. acute back pain that persisted for up to one week.

46. At one point in 2022, M.R. fell on the slippery floor while carrying a heavy basket filled with fish and injured his back. Although several of his coworkers and Defendant Doe saw his fall, neither Defendant Doe nor M.R.'s coworkers, many of whom were adults, helped him get up. Instead, they ridiculed and laughed at him.

47. In another incident, a heavy box fell on M.R., cutting his lip and causing him to fall. Again, Defendant Doe and M.R.'s coworkers laughed at him rather than offer assistance.

48. Rolando and other K'iche' employees harassed one worker for being kind to Plaintiffs. This worker moved to another work area to avoid further abuse.

49. Plaintiffs worked in a refrigerated part of the Raw Seafoods facility where they were exposed to persistently low temperatures. They routinely experienced cold and flu-like symptoms.

50. M.R. often had to wedge a napkin underneath the face mask Raw Seafoods provided its employees to catch the heavy sinus drainage while he worked.

51. Defendants did not provide Plaintiffs with adequate safety training to prevent injury while Plaintiffs used the machines.

52.     Defendants did not provide Plaintiffs with adequate safety equipment. For instance, Defendants provided only thin plastic gloves that broke frequently, when Plaintiffs needed more robust safety equipment for the blades, machines, and chemicals they had to handle.

53.     Plaintiffs worked in constant fear of being injured while operating the plant's dangerous machinery, which caused them serious psychological harm.

54.     Plaintiff Y.O. saw other workers injured on the job and heard of one worker who severed his finger while operating a fish-cutting machine. According to Y.O.'s coworkers, Raw Seafoods supervisors provided this worker with only Band-Aids and no other medical assistance.

55.     At the end of almost every shift, Defendant Doe required M.R. and Y.O. to use and thereby expose themselves to harsh, toxic chemicals to clean the machinery and its sharp blades. S.S. had to use Clorox bleach to clean the machines, which he was allergic to, resulting in rashes throughout his body.

56.     M.R. and Y.O. regularly experienced headaches and dizziness due to inhaling these toxic chemicals. S.S. also experienced these effects due to the cleaning chemicals on at least one occasion. Plaintiff M.R. developed rashes on his hands due to exposure to these chemicals.

57.     At times, M.R. slept as little as two to three hours a night while trying to attend both school and work. Y.O. slept about four hours a night while employed at Raw Seafoods. S.S. slept only about two to four hours per night while employed at Raw Seafoods and attempting to attend school.

58.     Defendants provided Plaintiffs only a thirty-minute meal break each day. Due to the lack of alternative food options and limited break time, M.R. and Y.O. often walked to a

nearby convenience store to buy juice and cookies during this break. M.R. and Y.O. became underweight as a result of their diet while working at Raw Seafoods. S.S. also lost weight during his employment because he could only buy junk food from the vending machine or sometimes the convenience store, as he lacked time to prepare food from home between work and school. Plaintiffs gained weight and reached a healthier body mass only after leaving Raw Seafoods.

***Defendants Obtained Forced Labor from Plaintiffs Through Threats of Serious Harm***

59.     Defendant Doe regularly threatened and intimidated M.R. and Y.O., telling them that they had to continue working at Raw Seafoods because they were minors, or words to that effect. He indicated that if they left Raw Seafoods, they would not be hired to work anywhere else.

60.     Defendant Doe's recurring threats that M.R. and Y.O. would suffer financial harm if they left Raw Seafoods compelled the minors to continue working, despite the abusive workplace conditions, so they could send money to their families in Guatemala.

61.     Defendant Doe also compelled Plaintiffs to work while deliberately impeding their ability to attend school. Defendant Doe increased Plaintiffs' isolation by inhibiting their ability to participate in school, which contributed to their feeling coerced to continue working at Raw Seafoods.

62.     Around August 2022, M.R. informed supervisors, including Defendant Doe, that he would begin attending school and asked them to modify his work schedule. Supervisors instructed him to start his shift thirty minutes later, at 4:00 PM.

63.     From around October 18, 2022, to November 3, 2022, M.R. took two weeks off from work to catch up on school and then returned to Raw Seafoods. Upon his return, Defendant Doe scolded M.R. for taking days off to attend to school duties.

11

64.     After M.R. returned to Raw Seafoods, during the Fall 2022 school period, Defendant Doe extended his work shift and forced him to work until approximately 4:30 AM.

65.     Before and after this change to his work schedule, M.R. was barely able to obtain two to three hours of sleep per night. This prolonged lack of sleep significantly impaired his capacity to study and learn, undermining his ability to concentrate and to complete homework.

66.     Similarly, S.S. was only able to obtain approximately two to four hours of sleep per night due to his work schedule, which Defendants refused to change. As a result, S.S. was often exhausted and unable to study.

67.     Defendant Doe prevented Y.O. from enrolling in the 2022-23 school year by refusing to grant him time off for his required vaccine appointment, despite Y.O. explaining that he required the vaccines to enroll in school.

68.     Defendant Doe also repeatedly pressured Plaintiffs to work on Saturdays and Sundays and scolded them if they did not work over the weekends.

69.     Plaintiffs M.R. and Y.O. felt obligated to work weekend shifts after witnessing Raw Seafoods supervisors fire another minor employee for failing to cover weekend shifts.

70.     Defendant Doe additionally subjected M.R. and Y.O. to threats of physical harm.

71.     During a shift in about November 2022, M.R. was unable to move a box weighing over fifty pounds. Defendant Doe yelled at M.R. for failing to move this box and threatened to harm him, saying, "*Te voy a dar una patada*" ("I am going to kick you"), or words to that effect.

72.     On one occasion, before M.R.'s work schedule changed in November 2022, Defendant Doe informed M.R. and Y.O. that they could not leave the facility at 2:30 AM, when their shifts usually ended. That night, Defendant Doe told the minors that they were required to support workers in another part of the processing plant, the shrimp area, whose shifts lasted until

approximately 5:00 AM. M.R. insisted that he had school the next day and needed to leave. The shrimp area manager, Alex Doe, told M.R., "*Vete a la mierda*" ("Go to hell"), or words to that effect. M.R. was afraid he would not have permission or the ability to leave. Defendant Doe and shrimp area manager Alex Doe eventually allowed the minors to leave, and M.R. and Y.O. only left after they received this approval from supervisors.

73.     On at least one occasion, Defendant Doe tried to intimidate M.R. with physical harm, threatening to beat him up after work.

74.     On another occasion, Defendant Doe raised his voice and told M.R. and Y.O. that if they wanted to fight, they could fight him in the parking lot. Defendant Doe's behavior scared S.S., who overheard the incident. Because Defendant Doe consistently grouped S.S. with M.R. and Y.O., S.S. feared not only for M.R. and Y.O., but also for himself.

75.     Defendant Doe's conduct caused Plaintiffs to suffer severe physical and psychological stress at work. Plaintiffs feared Defendant Doe would physically harm them during their employment at Raw Seafoods. All three Plaintiffs continue to fear that Defendant Doe will harm them to this day.

***Defendant Doe Actively Discriminated Against, Segregated, and Harassed Plaintiffs on the Basis of Their Ethnicity***

76.     Defendant Doe subjected Plaintiffs to a discriminatory hostile work environment based on Plaintiffs' ethnicity.

77.     Defendant Doe is a Guatemalan native of K'iche' ethnicity. Plaintiffs are not of K'iche' ethnicity.

78.    Defendant Doe regularly subjected M.R. and Y.O. to verbal abuse in front of their coworkers by calling them lazy and insulting their work abilities, which he attributed to them being non-K'iche'.

79.    Defendant Doe insulted M.R. and Y.O. with ethnic slurs almost daily. Defendant Doe regularly referred to M.R. and Y.O. as "lazy, non-K'iche' workers," or words to that effect.

80.    Because of their non-K'iche' ethnicity, Defendant Doe forced Plaintiffs, along with three other non-K'iche' employees, to perform more arduous and physically demanding tasks than those assigned to the K'iche' workers Defendant Doe supervised.

81.    Defendant Doe segregated non-K'iche' employees, including Plaintiffs, from K'iche' employees. He forced non-K'iche' employees to work in the salmon and shrimp processing section of the plant, which had more frigid temperatures than the areas where the K'iche' employees worked and required more arduous physical work—including lifting heavier materials—than the responsibilities assigned to the K'iche' workers.

82.    Defendant Doe assigned non-K'iche' employees, including Plaintiffs, to fish-cutting duties, which were more dangerous than packaging fish, the tasks more commonly reserved for K'iche' employees.

83.    Defendant Doe assigned non-K'iche' employees, including Plaintiffs, to work on faster, more dangerous fish-sorting machines than he assigned to K'iche' employees.

84.    Defendant Doe told M.R. and Y.O. they had to do these more physically demanding and dangerous tasks because of their "lazy" nature as non-K'iche' employees.

85.    Defendant Doe monitored non-K'iche' employees and scrutinized their work more closely than K'iche' employees.

86.     Based on their ethnicity, Defendant Doe caused Plaintiffs to suffer severe, pervasive, physically threatening, and humiliating racial discrimination, which materially altered the terms and conditions of their employment.

***The End of Plaintiffs' Employment at Raw Seafoods and Ongoing Emotional Distress***

87.     In December 2022, S.S. requested a different schedule because he was sleeping only two to four hours per night, which caused him to attend school exhausted and to underperform academically. Defendants refused. Thus, S.S. terminated his employment at Raw Seafoods.

88.     S.S. received his last paycheck from Defendants in mid-December 2022.

89.     On or about January 9, 2023, Plaintiff M.R. received a text message from Defendant Doe informing him that, on the following day, neither M.R. nor Y.O. should punch in to work, but rather should report directly to the plant's management office.

90.     On or about January 10, 2023, M.R. and Y.O. went to the management office together, where they were told that they were fired because there was not enough work at the plant and that they could come work for Raw Seafoods again in the summer.

91.     M.R. and Y.O. received their last paychecks from Defendants on or about January 9, 2023.

92.     Plaintiffs continue to suffer the detrimental effects of their time at Raw Seafoods. They continue to experience emotional distress from the memories of working at the processing plant. When Plaintiffs enter grocery stores, they feel emotionally distressed and physically repulsed, as it reminds them of the time when they began working at Raw Seafoods.

93.     Plaintiffs feel deep discomfort when they are near the smell of seafood sections and the cool temperatures of produce sections in supermarkets. Plaintiffs also feel emotionally

distressed during cold weather because they are reminded of the freezing conditions at the plant. These sensory triggers remind them of the stress, intimidation, and fear they felt working at Raw Seafoods.

## FIRST CLAIM FOR RELIEF

## FORCED LABOR - 18 U.S.C. § 1589

94.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

95.     Plaintiffs bring this claim under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589 ("TVPRA"), against all Defendants.

96.     Defendant Doe knowingly obtained the labor or services of Plaintiffs by means of or exposure to serious harm or threats of serious harm, including psychological, financial, and reputational harm, in violation of 18 U.S.C. § 1589(a)(2).

97.     Defendant Doe knowingly obtained the labor or services of Plaintiffs by means of threats of physical force, in violation of 18 U.S.C. § 1589(a)(1).

98.     Defendant Doe's violations of 18 U.S.C. § 1589 fell within the scope of his employment as an area supervisor and agent of Raw Seafoods since he engaged in this conduct under the authority vested in him by the corporation as an area supervisor, performed it during his working hours and in the location he was assigned to supervise, and the conduct was motivated, at least in part, by a purpose to serve the corporation's interest: to maximize its employees' productivity by means of forced labor and increase the corporation's output and revenues.

99. Defendants Raw Seafoods, Scott Hutchens, and Jason Hutchens knowingly benefited (that is, received value or financial benefits) from a venture whose supervisor-agent was engaging in violations of 18 U.S.C. § 1589.

100. Defendant Raw Seafoods, and Defendants Scott Hutchens and Jason Hutchens, as officers and co-owners of Raw Seafoods who exercise ultimate control of the company's hiring, financial, and operational activity, knew or should have known they were engaged in a venture whose supervisor-agent, Defendant Doe, repeatedly acted in violation of 18 U.S.C. § 1589.

101. Even in the absence of actual knowledge regarding all circumstances pertaining to the employment of minor Plaintiffs and Defendant Doe's abusive conduct, Defendants Raw Seafoods, Scott Hutchens, and Jason Hutchens acted, at a minimum, in reckless disregard of the fact that their venture included the obtaining of forced labor from minor employees.

102. Under the doctrine of *respondeat superior*, Defendants Raw Seafoods, Scott Hutchens, and Jason Hutchens are thus at least vicariously liable for Defendant Doe's violations of 18 U.S.C. § 1589.

103. Plaintiffs are entitled to monetary relief in the form of compensatory and punitive damages and interest in an amount to be determined at trial, and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1595(a).

## SECOND CLAIM FOR RELIEF

## MASSACHUSETTS FORCED SERVICES – Mass. Gen. Laws ch. 265, § 51 (2023)

104. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

105.     Plaintiffs bring this claim under the Massachusetts Act Relative to the Commercial Exploitation of People, Mass. Gen. Laws ch. 265, § 51 (2023), against all Defendants.

106.     Defendant Doe subjected Plaintiffs to forced services by causing them or exposing them to serious physical and psychological harm or threats to cause serious physical, financial, and reputational harm, in violation of Mass. Gen. Laws ch. 265, § 51 (2023).

107.     Defendant Doe's violations of Mass. Gen. Laws ch. 265, § 51 (2023) fell within the scope of his employment as an area supervisor and agent of Raw Seafoods since he engaged in this conduct under the authority vested in him by the corporation as an area supervisor, performed it during his working hours and in the location he was assigned to supervise, and the conduct was motivated, at least in part, by a purpose to serve the corporation's interest: to maximize its employees' productivity by means of forced labor and increase the corporation's output and revenues.

108.     Defendants Raw Seafoods, Scott Hutchens, and Jason Hutchens knowingly benefited, that is, received value or financial benefit, from a venture where its supervisor-agent was engaging in violations of Mass. Gen. Laws ch. 265, § 51 (2023).

109.     Defendant Raw Seafoods, and Defendants Scott Hutchens and Jason Hutchens, as officers and co-owners of Raw Seafoods, who exercise ultimate control of the company's hiring, financial, and operational activity, knew or should have known they were engaged in a venture whose supervisor-agent, Defendant Doe, repeatedly acted in violation of Mass. Gen. Laws ch. 265, § 51 (2023).

110.     Even in the absence of actual knowledge regarding all circumstances pertaining to the employment of minor Plaintiffs and Defendant Doe's abusive conduct, Defendants Raw

Seafoods, Scott Hutchens, and Jason Hutchens acted, at a minimum, in reckless disregard of the fact that their venture included the obtainment of forced labor from minor employees.

111.     Under the doctrine of *respondeat superior*, Defendants Raw Seafoods Scott Hutchens, and Jason Hutchens are thus at least vicariously liable for Defendant Doe's violations of Mass. Gen. Laws ch. 265, § 51 (2023).

112.     Plaintiffs are entitled to monetary relief in the form of compensatory and punitive damages and interest in an amount to be determined at trial, pursuant to Mass. Gen. Laws ch. 265, § 51 (2023).

**THIRD CLAIM FOR RELIEF**

**RACIAL AND ETHNIC DISCRIMINATION - 42 U.S.C. § 1981**

113.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

114.     Plaintiffs bring this claim under the Civil Rights Act of 1866, 42 U.S.C. § 1981, against all Defendants.

115.     Section 1981 prohibits discrimination in contracts on the basis of race, including "ancestry and ethnic characteristics." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

116.     Throughout their employment period, Plaintiffs had the basic skills needed for the performance of their positions, including packaging and cutting fish.

117.     Plaintiffs entered an employment contract with Defendant Raw Seafoods.

118.     Defendant Doe created and maintained a hostile discriminatory work environment that impaired the conditions of Plaintiffs' contractual relationship.

19

119.    Defendant Doe subjected Plaintiffs to regular verbal abuse at the workplace, including the daily use of derogatory epithets and other humiliating language targeting them because of their non-K'iche' ethnicity.

120.    Defendant Doe segregated the workplace, forcing Plaintiffs and other non-K'iche' employees to perform more arduous physical work than the K'iche' workers Defendant Doe supervised.

121.    Defendant Doe's conduct was motivated by the fact that Plaintiffs were not K'iche'.

122.    Plaintiffs suffered physical and emotional harm due to this discriminatory hostile work environment, including inability to sleep, deep anxiety, frequent colds, and weight loss.

123.    Defendant Doe's discriminatory conduct was so severe and pervasive that a reasonable person in Plaintiffs' position would find Plaintiffs' work environment to be hostile or abusive because of Plaintiffs' ethnicity.

124.    Defendant Doe acted with malice or reckless indifference to Plaintiffs' federally-protected rights.

125.    Defendants Raw Seafoods, Jason Hutchens, and Scott Hutchens failed to exercise reasonable care to prevent Defendant Doe's conduct.

126.    Defendants Raw Seafoods, Jason Hutchens, and Scott Hutchens acted with reckless indifference in failing to prevent Defendant Doe's conduct.

127.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined at trial for denying Plaintiffs the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationship with Defendant Raw Seafoods on account of their ethnicity, pursuant to 42 U.S.C. § 1981a(a).

20

128.     Plaintiffs are entitled to equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 1981.

<b>FOURTH CLAIM FOR RELIEF</b>

<b>ALIEN TORT STATUTE – 28 U.S.C. § 1350: HAZARDOUS CHILD LABOR</b>

129.     Plaintiffs repeat and incorporate each allegation contained in the preceding paragraphs of this complaint as if fully set forth herein.

130.     The Alien Tort Statute ("ATS") provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

131.     Hazardous child labor violates the law of nations and treaties of the United States.

132.     The prohibition of hazardous child labor is a universal, specific, and obligatory norm of customary international law. Hazardous child labor is also prohibited by treaty. *See* ILO Convention (No. 182) Concerning the Prohibition and Immediate Action for the Elimination of the Worst Forms of Child Labor, June 17, 1999, S. Treaty Doc. No. 106-5 (1999), 2133 U.N.T.S. 161 (ratified by the United States, along with all 187 Member States of the International Labor Organization); ILO Convention (No. 138) Concerning Minimum Age for Admission to Employment, June 26, 1973, 1015 U.N.T.S. 297; Convention on the Rights of the Child art. 32, Nov. 20, 1989, 1577 U.N.T.S. 3; Universal Declaration of Human Rights, G.A. Res. 217A(iii), U.N. Doc. A/810 (1948); International Covenant on Civil and Political Rights, art. 24, Dec. 16, 1966, 999 U.N.T.S. 171, S. Treaty Doc. 95-20; UNICEF, *The State of the World's Children 1997*, at 24 (1997); Int'l Lab. Off., *Child Labor: Targeting the Intolerable* 8 (1997); U.N. Comm'n on Hum. Rts., *Programme of Action for the Elimination of the Exploitation of Child Labour*, ¶¶ 3, 5, E/CN.4/RES/1993/79 (1993); Manfred Nowak, *UN Covenant of Civil and*

*Political Rights*, *CCPR Commentary* 148 (1993); Franziska Humbert, *The Challenge of Child Labour in International Law* 84, 119 (2009) (explaining that there is "enough evidence to qualify the prohibition of child labo[]r in international law as a norm of *jus cogens*").

133.    Similarly, U.S. law prohibits "any oppressive child labor in commerce or in the production of goods…." 29 U.S.C. § 212(c) (FLSA); *see also id*. § 203(l) (defining "oppressive child labor"); 29 C.F.R. § 779.505 (defining "oppressive child labor"); 29 C.F.R. § 570.61(a)(4) (finding that "all occupations involved in the operation or feeding of the [certain] power-driven machines…including, for example, the slicing of…seafood" are particularly hazardous for the employment of minors between sixteen and eighteen years of age or detrimental to their health or well-being); 29 C.F.R. § 570.33(e) (occupations that involve operating food grinders, choppers, processors, and cutters constitute oppressive child labor within the meaning of the FLSA when performed by minors who are fourteen and fifteen years of age); Mass Gen. Laws ch. 149, § 60 (2023) (prohibiting any person under sixteen years of age from working "in, about or in connection with any factory, workshop, manufacturing or mechanical establishment at any time"); Mass. Gen. Laws ch. 149, § 1 (2023) (defining "manufacturing establishments" as "any premises, room or place used for the purpose of making, altering, repairing, ornamenting, finishing or adapting for sale any article or part thereof," and "mechanical establishments" as "any premises…where machinery is employed in connection with any work or process carried on therein").

134.    Defendants Raw Seafoods, Rolando Doe, Jason Hutchens, and Scott Hutchens subjected Plaintiffs to hazardous child labor: "work which, by its nature or the circumstances in which it is carried out, is likely to harm the health, safety or morals of children." ILO Convention

(No. 182) Concerning the Prohibition and Immediate Action for the Elimination of the Worst Forms of Child Labor, art. 3(d), June 17, 1999, S. Treaty Doc. No.106-5 (1999).

135.    Plaintiffs are thus entitled to compensatory and punitive damages, as well as attorneys' fees and costs, in amounts to be determined at trial.

## JURY DEMAND

136.    Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.  Award Plaintiffs monetary relief in the form of compensatory and punitive damages and interest due to being subjected to forced labor, pursuant to 18 U.S.C. § 1595(a), in an amount to be determined at trial;

b.  Award Plaintiffs monetary relief in the form of compensatory and punitive damages and interest due to being subjected to forced services, pursuant to Mass. Gen. Laws ch. 265, § 51 (2023), in an amount to be determined at trial;

c.  Award Plaintiffs compensatory and punitive damages for denying Plaintiffs the enjoyment of all benefits, privileges, terms, and conditions of their contractual relationship with Defendant Raw Seafoods, on account of their ethnicity, under 42 U.S.C. § 1981(a), in an amount to be determined at trial;

d.  Grant equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 1981(a) or to which Plaintiffs otherwise may be entitled;

e.  Award Plaintiffs compensatory and punitive damages for violating the law of nations on the prohibition of hazardous child labor pursuant to 28 U.S.C. § 1350;

f.  Order disgorgement of profit that accrued to Defendants from Plaintiffs' labor;

g.  Award attorneys' fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1988(b); 18

    U.S.C. § 1595(a); and 28 U.S.C. § 1350;

h.  Grant such additional and further relief as the Court deems just and proper.


Dated: September 24, 2024


/s/ Michael J. Wishnie
Jordan Cozby, Law Student Intern[*]
Chisato Kimura, Law Student Intern[*]
Zoë Mermelstein, Law Student Intern[*]
María Perales Sánchez, Law Student Intern[*]
Michael J. Wishnie (BBO#568654)
Muneer I. Ahmad[**]
Michael K.T. Tan[**]
Worker & Immigrant Rights Advocacy
Clinic
Jerome N. Frank Legal Svcs. Org.
P.O. Box 209090
New Haven, CT 06520

Thomas Smith (BBO#673200)
(203) 432-4800
Pablo Carrasco (BBO#693735)
(857) 293-0332
Justice at Work
33 Harrison Ave Suite 501
Boston, MA 02111
*Attorneys for Plaintiffs*


[*] Motion for law student admission forthcoming.
[**] Motion for admission *pro hac vice* forthcoming.